**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

INTERSTATE FIRE AND CASUALTY COMPANY,
an Illinois Corporation

        Plaintiff,

   vs.

BOLES CUSTOM BUILDERS, Inc., a Colorado
Corporation, and
SUNRISE RIDGE CONDOMINIUMS OWNERS
ASSOCIATION, a Montana corporation

        Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**
**JURY TRIAL DEMANDED ON ISSUES TRIABLE TO JURY**

Plaintiff, Interstate Fire and Casualty Company ("Interstate"), an Illinois Corporation, through its counsel, brings this Complaint against Defendants Boles Custom Builders, Inc. ("Boles"), a Colorado corporation, and Sunrise Ridge Condominiums Owners Association ("Sunrise Ridge COA"), a Montana corporation.

## INTRODUCTION

1.     This is an action for declaratory judgment, which arises out of an actual and existing controversy concerning the parties' rights, status, and liabilities under insurance policies issued by Interstate in connection with a lawsuit filed by Defendant Sunrise Ridge COA against Defendant

Boles, and others, entitled *Sunrise Ridge Condominiums Owners Association, Inc. v. Boles Custom Builders, Inc., et al.,* Case No. DV-29-15-28 in the First Judicial District Court of Madison County, Montana ("the *Sunrise Ridge* Lawsuit").

2.      Plaintiff, Interstate, is an insurance company that issued three consecutive commercial general liability insurance policies to Boles in Colorado.

3.      Interstate brings this Complaint under 28 U.S.C. §§ 2201 and 2202, seeking a declaration with respect to coverage obligations it allegedly owed to Defendant Boles in the *Sunrise Ridge* Lawsuit.

4.      Interstate denied a defense to Boles against the *Sunrise Ridge* Lawsuit because of certain terms, provisions, and exclusions in the Interstate policies issued to Boles.

5.      The *Sunrise Ridge* Lawsuit settled, and Boles allegedly assigned its then existing rights against Interstate to Defendant Sunrise Ridge COA.

6.      Interstate seeks a declaration that it had no duty to defend or indemnify Boles in the *Sunrise Ridge* Lawsuit, and had no duty to defend or indemnify Sunrise Ridge COA, as a purported assignee of Boles' claims against Interstate.

## THE PARTIES

7.      Plaintiff Interstate is an Illinois corporation with its principal place of business in Illinois.  Interstate was and is eligible to do business as an insurer in the State of Colorado.

8.      Upon information and belief, Defendant Boles became a delinquent Colorado corporation on or about February 1, 2013.

9.      Upon information and belief, Defendant Boles became an inactive Montana corporation on or about November 2, 2009.

2

10.      Upon information and belief, Defendant Boles was a Colorado corporation with its principal place of business in Edwards, Colorado.

11.      Defendant Sunrise Ridge COA is a Montana corporation with its principal place of business in Big Sky, Montana.

## JURISDICTION AND VENUE

12.      Plaintiff, Interstate, asserts a claim for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202 in that there is an actual and continuing controversy between Interstate and Defendants.

13.      The Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship among the parties, and because the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

14.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Interstate policies issued to Boles occurred in the District of Colorado.

## FACTUAL BACKGROUND

### The *Sunrise Ridge* Lawsuit

15.      On or about November 19, 2015, Sunrise Ridge COA filed a Complaint against Boles and "Does I through XXX" in the Fifth Judicial District Court of Madison County, Montana under Case Number DV-29-15-58.

16.      On August 22, 2016, Sunrise Ridge COA filed a Second Amended Complaint in the *Sunrise Ridge* Lawsuit, naming Boles, as a Defendant.

17.      On March 17, 2017, Sunrise Ridge COA filed a Third Amended Complaint in the *Sunrise Ridge* Lawsuit. A copy of the Third Amended Complaint is attached hereto as Exhibit "A".

18.     The *Sunrise Ridge* Lawsuit, as fully amended in the Third Amended Complaint, alleged that "Sunrise Ridge COA is the owners' association for the Sunrise Ridge Condominiums in the Yellowstone Club, Big Sky, Montana. Through its Board of Directors, Sunrise Ridge COA is solely responsible for the maintenance and repair of the Common Elements of the Sunrise Ridge Condominiums, including roofs and exterior surfaces.  The claims alleged herein relate to construction defects and accompanying property damage found within the Common Elements." The Third Amended Complaint further alleged that the Sunrise Ridge COA's claims "do not relate to any claim a particular condominium unit owner may have for individual damage caused to their own unit or other individual claims."

19.     The *Sunrise Ridge* Lawsuit, as amended, contended that, in 2003, a developer, called Sunrise Ridge at Yellowstone Club, LLC ("SRYC"), acquired real property near Big Sky, Montana, with plans to develop a condominium project on the property known as the Sunrise Ridge Condominiums ("the Project").

20.     The *Sunrise Ridge* Lawsuit alleged that, in 2003, SRYC hired Snowdon Architects to perform architectural services for Phase I of the Project, including "design development, construction documentation and construction administration services." Phase I of the Project consisted of five triplex units.

21.     The *Sunrise Ridge* Lawsuit alleged that, in 2003 and 2004, Boles, as the selected general contractor, participated in discussions with Snowdon Architects about the preliminary design of Phase I of the Project.

22.     The *Sunrise Ridge* Lawsuit alleged that, in 2004 and 2005, Boles entered into one or more contracts to serve as the general contractor for the construction of Phase I of the Project.

23.     The *Sunrise Ridge* Lawsuit alleged that Boles entered into subcontracts with TJC Homes, Inc. ("TJC") to provide roofing services for Phase I, and Gallatin Insulation to provide insulation services for Phase I. According to the *Sunrise Ridge* Lawsuit, the <u>first triplex in Phase I was completed in June 2006</u>, and the remaining four triplexes were completed between June 2006 and July 2007.

24.     The *Sunrise Ridge* Lawsuit alleged that Boles and its subcontractors constructed and completed the remaining buildings at the Sunrise Ridge Condominium Project between October 2007 and November 2008.

25.     The *Sunrise Ridge* Lawsuit alleged that, in 2010, an independent consultant examined the roofs and other common elements of the Sunrise Ridge Condominiums and concluded that the roofs were in normal condition, and that the Sunrise Ridge COA could plan to reserve funds to begin replacing shingles on the roofs 20 years after construction, or beginning in 2026.

26.     The *Sunrise Ridge* Lawsuit thereafter alleged that, "at no time did any employee or agent of Developer Defendants who were in day to day control of the Common Elements of the Project inform any independent member of the Board that they possessed information that would suggest the stated 20 year life expectancy of the roofs, or the nature of shingle replacement which would be required, was incorrect."

27.     The *Sunrise Ridge* Lawsuit alleged that in the winter of 2013, a number of leaks in the roofs at the Sunrise Ridge Condominiums were reported to the Board of the Sunrise Ridge COA. It was alleged that a roofing contractor, Ridgeline Roofing, performed an assessment of the condition of the roofs, and issued a report in June 2013, which identified items for repair.

28.     The Sunrise Ridge Lawsuit alleged that in the summer of 2013, the Board was

advised that the roofs in Sunrise Ridge Condominiums were deteriorating rapidly, and that it was likely the roofs would need to be replaced sooner than expected.

29.     The *Sunrise Ridge* Lawsuit alleged that significant leaks developed over the winter of 2013-2014, and that additional leaks were detected in the spring of 2014.

## Correspondence Regarding the *Sunrise Ridge* Lawsuit

30.     By letter, dated November 17, 2015, counsel for Sunrise Ridge COA provided written notice of construction defects at the Sunrise Ridge Condominiums, pursuant to the Montana Construction Defect statute, Sections 70-19-426, et seq. Mont. Code Ann., to Boles.  Interstate was copied on this letter.

31.     By letter, dated December 10, 2015, Interstate wrote to Navigators Insurance, which had issued a project-specific policy for the Project to Boles and others, and stated that Navigators Insurance may owe a duty to defend the mutual insured, Boles, against the notice of construction defects, dated November 17, 2015.

32.     By letter, dated January 6, 2016, Interstate denied coverage to Boles against the *Sunrise Ridge* Lawsuit.  The basis for Interstate's denial was because of the terms, conditions, and exclusions in the policies, including, but not limited to, Endorsements, titled Exclusion - Operations Covered by a Consolidated (Wrap-Up) Insurance and Condominium and Townhome Construction Exclusion.   This letter also stated that "[t]he adjuster from Navigators Insurance confirms that Navigators issued a policy to CIP Sunrise Ridge Owner, LLC that includes Boles Custom Builders as a 'Named Insured' on the policy issued to CIP Sunrise.  The Sunrise policy was a policy specifically issued to cover the Sunrise Ridge Condominiums."   A copy of the January 6, 2016 Interstate letter is attached hereto as <u>Exhibit "B"</u>.

33.     On or about September 27, 2016, Hall & Evans, Navigators-hired defense counsel for Boles in the *Sunrise Ridge* Lawsuit, sent a "notice of claim" letter to Interstate, which identified Interstate Policy Number PGL1000016.   The "notice of claim" letter attached, among other documents, the Second Amended Complaint in the *Sunrise Ridge* Lawsuit.   The "notice of claim" letter also notified Interstate that Navigators Insurance Company was defending Boles against the *Sunrise Ridge* Lawsuit, and that Navigators Insurance Company retained Hall & Evans, as defense counsel for Boles.   The "notice of claim" also stated that Hall & Evans "tendered the claim to Everest Indemnity Company Excess, under its Policy No. 71R6000001061, and Lexington Insurance Company, under its Policy No. 4601558."   A copy of the "notice of claim" letter, dated September 27, 2016, with the Second Amended Complaint is attached hereto as Exhibit "C".

34.     The "notice of claim" letter, dated September 27, 2016, did not request Interstate to provide a defense to Boles against the *Sunrise Ridge* Lawsuit, or otherwise participate in the lawsuit.

35.     On or about October 17, 2016, Interstate forwarded its prior denial letter, dated January 6, 2016, to Hall & Evans, reiterating its previously stated coverage positions.

36.     Defendants never tendered the Third Amended Complaint, filed on March 17, 2017, in the *Sunrise Ridge* Lawsuit to Interstate.

37.     By letter, dated August 3, 2018, counsel for Sunrise Ridge COA issued a demand to Interstate, claiming Boles had assigned to Sunrise Ridge COA Boles' rights to sue for a bad faith failure to defend the *Sunrise Ridge* Lawsuit.   Sunrise Ridge COA demanded $4 million from Interstate, based on an assignment of such rights.   This letter notified Interstate of an earlier settlement in the *Sunrise Ridge* Lawsuit, and that Boles agreed to: (1) an entry of judgment, subject to partial satisfaction by partial payment from other insurers of Boles, (2) an assignment of claims

Boles held against others including Interstate; and (3) a covenant not to execute on the unpaid portion of the judgment.

38.     Upon information and belief, the parties in the *Sunrise Ridge* Lawsuit entered into a Settlement Agreement, effective September 15, 2017.  The Settlement Agreement was entered into without notice to, and without the consent of, Interstate.

39.     Upon information and belief, an Amended Settlement Agreement, effective September 15, 2017, was entered into, which amended the original Settlement Agreement by, among other things, deleting the condition that the Settlement Agreement was subject to approval by the Court, including the reasonableness of the settlement and the absence of collusion.   The Amended Settlement Agreement was entered into without notice to, and without the consent of, Interstate.

40.     Upon information and belief, Boles and Sunrise Ridge COA entered into a Covenant not to Execute and Assignment of Claims, in which Boles assigned all of its rights it may assert against Interstate Policy Number PGL1000016 to Sunrise Ridge COA.    The Covenant not to Execute and Assignment of Claims was entered into without notice to, and without the consent of, Interstate.

41.     Upon information and belief, Boles and Sunrise Ridge COA entered into an Amended Covenant not to Execute and Assignment of Claims, effective July 3, 2018, in which Boles assigned all of its rights it may assert against Interstate Policy Number PGL1000016 to Sunrise Ridge COA. Upon information and belief, the Amended Covenant not to Execute and Assignment of Claims amended the original Covenant not to Execute and Assignment of Claims, by among other things, deleting the condition that required the Court to approve the Covenant not to Execute and the Settlement Agreement. The Amended Covenant not to Execute and Assignment of Claims was

entered into without notice to, and without the consent of, Interstate.

### Interstate Policies

42.     Interstate issued Policy Number PGL 1000016 to Boles Custom Builder, Inc., c/o John Boles P.O. Box 426, Edwards, CO 81632, which was effective from September 2, 2004 to September 2, 2005, and subject to liability limits of $1 million per occurrence and $2 million in the aggregate ("the 04-05 Interstate Policy"). A copy of the 04-05 Interstate Policy is attached hereto as Exhibit "D".

43.     Interstate issued Policy Number PGL 1100004 to Boles Custom Builders, Inc., 210 Edwards Village Blvd., Edwards, CO 81632, which was effective from September 2, 2005 to September 2, 2006, and subject to  liability limits of $1 million per occurrence and $2 million in the aggregate ("the 05-06 Interstate Policy"). A copy of the 05-06 Interstate Policy is attached hereto as Exhibit "E".

44.     Interstate issued Policy Number PGL 1000521 to Boles Custom Builders, Inc.; Yellowstone Property Management, LLC, 210 Edwards Village Blvd., Edwards, CO 81632, which was effective from September 2, 2006 to September 2, 2007 and subject to liability limits of $1 million per occurrence and $2 million in the aggregate ("the 06-07 Interstate Policy"). A copy of the 06-07 Interstate Policy is attached hereto as Exhibit "F".

45.     Collectively, the 04-05 Interstate Policy, the 05-06 Interstate Policy, and 06-07 Interstate Policy are referred to as "Interstate Policies".

A.      **Insuring Agreement**

46.     The 04-05 Interstate Policy contains an Insuring Agreement in its Commercial General Liability Coverage Form, while the 05-06 Interstate Policy and 06-07 Interstate Policy

contain an Amendment to Insuring Agreement – Known Injury or Damage Endorsement.   The

Insuring Agreement in each of the Interstate Policies provide, in pertinent part, the following:

      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

\* \* \*

      b.     This insurance applies to "bodily injury" and "property damage" only if:

      (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2)     <u>The "bodily injury" or "property damage" occurs during the policy period.</u> [Emphasis added,]

47.     The 04-05 Intestate Policy contains a Coverage Limitation – Continuous or

Progressive Injury, Damage or Offense Endorsement, which states, in pertinent part, the following:

      I.     Coverage A. Bodily Injury and Property Damage (Section I – Coverages) is amended as follows:

      1.     Paragraph b. is deleted from 1. Insuring Agreement and is replaced in its entirety by the following:

      b.     This insurance applies to "bodily injury" or "property damage" only if:

      (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2)     The "bodily injury" or "property damage" occurs during this policy period.

However, this insurance does not apply to and we have no duty to defend any insured against any claim or suit seeking damages for

"bodily injury" or "property damage" that is continuous or progressively deteriorating and which "manifests" prior to the inception of this policy period.

2.      Paragraph d. is added to 1. Insuring Agreement:

d.      The policy period for this policy of insurance may be comprised of more than one consecutive annual period. However, whether or not this policy of insurance applies to more than one consecutive annual period, the most we will pay for all damages arising out of "bodily injury" or "property damage" which "manifests" during one annual period is the limits of insurance available for that one annual period. (See Section III – Limits of Insurance).

This provision applies even if such "bodily injury" or "property damage" which "manifests" during one annual period continues or progressively deteriorates into a subsequent annual period(s).

* * *

III.    The following definition is added to Section V – Definitions: "Manifests" means:

* * *

b.      For "property damage", when such damage is first discovered by any Insured or by the person or organization whose property suffered such damage, whichever comes first.

48.     Section V (Definitions) of the Interstate Policies defines "property damage" as the following:

"Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

11

      b.    Loss of use of tangible property that is not physically harmed. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

49.    Section V (Definitions) of the Interstate Policies defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**B.**    <u>**Exclusions and Endorsements**</u>

50.    The Interstate Policies are each subject to Exclusion j. (Damage to Property), which provides, in relevant part, as follows:

This insurance does not apply to:

* * *

j.    Damage to Property

"Property damage" to:

* * *

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

51.    The Interstate Policies define the terms "products-completed operations hazard" and "your work" to mean the following:

"Products-completed operations hazards":

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all the work called for in your contact has been completed;
(b)     When all the work to be done at the site has been completed if your contract calls for work at more than one site.
(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

"Your work" means:

a.      Work or operations performed by you or on your behalf; and
b.      Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and
b.      The providing of or failure to provide warnings or instructions.

52.     The 04-05 Interstate Policy contains a Condominium and Townhome Construction

Exclusion Endorsement, which states, in pertinent part, the following:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy does not apply to "property damage", "bodily injury", or

"personal and advertising injury" arising out of, or related in any way to "your work" or "your product" within the "products-completed operations hazard" when "your work" or "your product" are part of or incorporated into the following:

a.      a condominium or condominium project; or
b.      a townhouse or townhouse project.

This endorsement does not apply if "your work" occurs or "your product" is supplied or incorporated after such condominium or townhouse was certified for occupancy, except if "your work" or "your product" is performed or installed after the certificate of occupancy is effective in order to repair or replace "your work" or "your product" that was completed or incorporated prior to the effective date of the certificate of occupancy.

For the purposes of this endorsement, a condominium or townhouse is

1.      a room or suite of rooms that are
2.      used as a residence;
3.      located in a building or a group of associated buildings that are occupied by more than one household of persons;
4.      and such room or suite of rooms is owned by the resident(s) of such room or suite, or the room or suites contained in the building or group of associated buildings are individually titled or owned by the residents of the building(s).

However, this exclusion does not apply to the following scheduled locations:

1.      Mountain Chalet 13/14, 99 Chalet Road, The Yellowstone Club, Big Sky MT 59716;
2.      Sunrise Ridge home site #16, #17, #18, #20, the Yellowstone Club, Big Sky MT 59716.

53.      The 05-06 Interstate Policy and the 06-07 Interstate Policy contain a Condominium and Townhome Construction Exclusion Endorsement, written on Form ICB-6004, which states, in pertinent part, the following:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

14

The following exclusion is added to Paragraph 2., Exclusion of SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph 2., Exclusions of SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:

This policy does not apply to:

"Bodily injury", "property damage", or "personal and advertising injury" arising out of or related in any way to "your work" or "your product" within the "products-completed operations hazard" when "your work" or "your product" are part of or incorporated into the following:

a.    A "condominium or townhouse"; or
b.    A "condominium or townhouse" project.

This exclusion does not apply if "your work" occurs or "your product" is supplied or incorporated after such "condominium or townhouse" was certified for occupancy, except if "your work" or "your product" is performed or installed after the certificate of occupancy is effective in order to repair or replace "your work" or "your product" that was completed or incorporated prior to the effective date of the certificate of occupancy.

As used in this endorsement, the term "condominium or townhouse" means a unit of residential real property in a multi-unit residential building or property where each unit is separately owned and titled.

54.    The 05-06 Interstate Policy contains an Endorsement, titled Exception to form ICB-6004, which states, in pertinent part, the following:

> Mountain Chalet 15/16
> 99 Chalet Road
> The Yellowstone Club
> Big Sky, MT
>
> Sunrise Ridge Homesites #16, #17, #18 and #20
> The Yellowstone Club
> Big Sky, MT

55.    The 06-07 Interstate Policy contains an Endorsement, titled Exception to form ICB-6004, which states, in pertinent part, the following:

The following are exceptions to form ICB-6004:

Mountain Chalet 15/16
99 Chalet Road
The Yellowstone Club
Big Sky, MT

Sunrise Ridge Homesites #13, #16, #17, #18 and #20
The Yellowstone Club
Big Sky, MT

Mountain Meadows Condominium Project
4680 Meadow Drive
East Vail, CO 81657

Mountain Hauss 556/558
292 East Meadow Drive
Vail, CO

56.     The Interstate Policies contain an Endorsement, titled Exclusion – Designated

Operations Covered by a Consolidated (Wrap-Up) Insurance Program, which provides, in pertinent

part, the following:

SCHEDULE

Description and Location of Operation(s):
Any wrap up job or project

(If no entry appears above, information required to complete this
endorsement will be shown in the Declarations as applicable to this
endorsement.)

The following exclusion is added to paragraph 2., Exclusions of
COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE
LIABILITY (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising
out of either your ongoing operations or operations included within the
"products completed operations hazard" at the location described in the
Schedule of this endorsement, as a consolidated (wrap-up) insurance program
has been  provided by the prime contractor/project manager or owner of the

construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) provides coverage identical to that provided by this Coverage Part;
(2) has limits adequate to cover all claims; or
(3) remains in effect.

**C.**     **Conditions**

57.     Section (IV) of the Interstate Policies contains the following pertinent Conditions,

which state, in pertinent part, the following:

2.     Duties In the Event of Occurrence, Offense, Claim Or Suit

* * *

b.     If a claim is made or "suit" is brought against any insured, you must:

(1)     Immediately record the specifics of the claim or "suit" and the date received; and
(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.     You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)     Authorize us to obtain records and other information;

* * *

d.     No insured will, except that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.     Legal Action Against Us

No person or organization has a right under this Coverage Part:

a.      To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.      To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payment under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

58.     The Interstate Policies contain a Common Policy Conditions Form, which states, in

pertinent part, the following:

All Coverage Parts included in this policy are subject to the following conditions.

* * *

F.      TRANSFER OF RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the cause of death of an individual Named Insured.

* * *

<u>**Other Insurance Policies issued to Boles**</u>

59.     Upon information and belief, a project-specific or Wrap-Up Policy from Navigators

Specialty Insurance Company ("Navigators") was issued for the Sunrise Ridge Condominium

Project.   Upon information and belief, Boles was an insured under the Navigators policy.

60.     Upon information and belief, Navigators fully defended Boles against the *Sunrise*

*Ridge* Lawsuit.

61.     Upon information and belief, a first-level excess policy from Everest Indemnity Insurance Company ("Everest") was issued for the Sunrise Ridge Condominium Project.   Upon information and belief, Boles was an insured under the Everest policy, which had limits of $10,000,000.

62.     Upon information and belief, a second-layer excess policy from Lexington Insurance Company ("Lexington") was issued for the Sunrise Ridge Condominium Project.  Upon information and belief, Boles was an insured under the Lexington policy, which had limits of $15,000,000.

63.     Upon information and belief, a third-layer excess policy from Starr Excess Liability Insurance Company, Ltd. ("Starr") was issued for the Sunrise Ridge Condominium Project. Upon information and belief, Boles was an insured under the Starr policy, which had limits of $25,000,000.

64.     Upon information and belief, the collective limits of the project-specific policies issued by Navigators, Everest, Lexington, and/or Starr, have not exhausted.

## **FIRST CAUSE OF ACTION**

### **(Declaratory Judgment - All Defendants)**

65.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 64 of this Complaint.

66.     Pursuant to C.R.S. § 7-90-903(1), at the time of the assignment, Boles could not bring a lawsuit against Interstate because Boles is a delinquent Colorado corporation, and has been a delinquent Colorado corporation since at least February 1, 2013.  In addition, Boles is not a Montana corporation.  Thus, Boles' assignment of its rights to sue Interstate to Sunrise Ridge COA is also not valid, insofar as Boles could not assign any more rights than it possessed at the time of the

assignment. (See *Medical Lien Mgmt v. Allstate Ins. Co.*, 954 P. 3d 167, 171 - 172 (Colo. App. 2013); *Massey-Ferguson Credit Corp. v. Brown*, 173 Mont. 253, 256 (1977) ["an assignee stands in the shoes of the assignor…"].)

67.     Assuming that Boles' assignment of its right to sue Interstate to Sunrise Ridge COA is valid, which it is not, Boles only assigned its claims against Interstate under the 04-05 Interstate Policy, and not the 05-06 Interstate Policy or the 06-07 Interstate Policy.

68.     Interstate seeks a declaratory judgment that Boles' assignment of its claims to Sunrise Ridge COA is not valid because Boles was and is a delinquent Colorado corporation, and, therefore, Sunrise Ridge COA has no standing to seek damages from Interstate.

69.     Alternatively, if the Court declares that Boles' assignment of its claims to Sunrise Ridge COA is a valid assignment, Interstate seeks a declaration that the assignment was limited to the 04-05 Interstate Policy, for which no coverage could attach due to the applicability of Exclusions j(5) and j(6), among other exclusions.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

70.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 69 of this Complaint.

71.     The "notice of claim" letter, dated September 27, 2016, was not a proper tender letter because it did not request Interstate to provide a defense to Boles against the *Sunrise Ridge* Lawsuit, or otherwise participate in the lawsuit. Instead, this letter was simply informing Interstate of the *Sunrise Ridge* Lawsuit, and that Navigators was defending Boles against the *Sunrise Ridge* Lawsuit, with excess insurers in place.

72.     Assuming that the "notice of claim" letter, dated September 27, 2016, did request a defense from Interstate, which it did not, such a request for a defense was limited to the 04-05 Interstate Policy.

73.     Interstate seeks a declaratory judgment that the "notice of claim" letter, dated September 27, 2016, was not a tender of Boles' defense to Interstate.

74.     Alternatively, if the Court declares that the "notice of claim" letter, dated September 27, 2016, was a proper tender of Boles' defense, the tender only requested a defense under the 04-05 Interstate Policy.

### THIRD CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

75.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 74 of this Complaint.

76.     Defendants did not provide a copy of the Third Amended Complaint in the *Sunrise Ridge* Lawsuit to Interstate.

77.     The Third Amended Complaint in the *Sunrise Ridge* Lawsuit was the operative Complaint, and any obligations that Interstate allegedly owes to Boles, or Sunrise Ridge COA, as a purported assignee of Boles' claims against Interstate, for defense or indemnity, should be based on the Third Amended Complaint, not the Second Amended Complaint in the *Sunrise Ridge* Lawsuit. (See *Berne v. Stevens*, (1923) 67 Mont. 254, 255 [held that when an amended pleading is filed it supersedes the original and the latter at once becomes "functus officio", and that a party is not bound by the admission in the pleading which was superseded.]; see also *Prospect Res. Inc. v. St. Paul Fire & Marine Ins. Co.,* 2012 U.S. Dist. LEXIS 10257, 2012 WL 263394 (D. Colo. 2012).)

78.     Interstate seeks a declaration that Interstate's obligations to the assignee of Boles for the *Sunrise Ridge* Lawsuit, if any, should be determined by the allegations made in Sunrise Ridge COA's Third Amended Complaint, not the Second Amended Complaint, which, by the time of the assignment, was no longer of any legal effect.

79.     Interstate seeks a declaratory judgment that, under the terms, conditions, and exclusions of the Interstate Policies, there was and is no coverage for the claims in the Third Amended Complaint in the *Sunrise Ridge* Lawsuit, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA, as a purported assignee of Boles' claims against Interstate.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

80.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 79 of this Complaint.

81.     The Interstate Policies provide coverage to Boles for "property damage" that occurs only during its policy periods, which were effective from September 2, 2004 to September 2, 2007. (See *Leprino v. Nationwide Prop. and Cas. Ins. Co.*, 89 P. 3d 487, 490 (Colo. App. 2003); *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo., 2007).)

82.     The *Sunrise Ridge* Lawsuit did not allege any "property damage", as this term is defined in the Interstate Policies, having occurred during the Interstate policy periods.

83.     The *Sunrise Ridge* Lawsuit alleged that the roofs and other "property damage" at the Sunrise Ridge Condominiums did not occur until 6 years after the Interstate Policies expired.

84.      Interstate seeks a declaratory judgment that, under the terms, conditions, and exclusions of the Interstate Policies, there is no coverage for the *Sunrise Ridge* Lawsuit because no "property damage" allegedly occurred during the Interstate Policy periods, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA, as a purported assignee of Boles' claims against Interstate.

## FIFTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

85.      Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 84 of this Complaint.

86.      The Interstate Policies provide coverage to Boles for "property damage" that occurs during the policy periods, which were effective from September 2, 2004 to September 2, 2007.

87.      Exclusion j(5) in the Interstate Policies exclude from coverage "property damage" that occurred while Boles was performing operations on the Sunrise Ridge Condominium Project.

88.      Exclusion j(6) of the Interstate Policies exclude from coverage "property damage" that must be restored, repaired or replaced because Boles' "work" was incorrectly performed on it.

89.      The *Sunrise Ridge* Lawsuit alleged that the Sunrise Ridge Condominiums were completed from June 2006 to November 2008, after the expiration of the 04-05 Interstate Policy.

90.      Interstate seeks a declaratory judgment that, under terms, conditions, and exclusions of the Interstate Policies, there is no coverage for the *Sunrise Ridge* Lawsuit pursuant to Exclusions j(5) and j(6) in the Interstate Policies, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA, as a purported assignee of Boles' claims against Interstate, particularly with regard to the 04-05 Interstate Policy.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

91.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 90 of this Complaint.

92.     The Interstate Policies contain a Condominium and Townhome Construction Exclusion.

93.     The *Sunrise Ridge* Lawsuit alleged construction defects to the Common Elements at the Sunrise Ridge Condominiums.

94.     Interstate seeks a declaratory judgment that, under terms, conditions, and exclusions of the Interstate Policies, there is no coverage for the *Sunrise Ridge* Lawsuit pursuant to the Condominium and Townhome Construction Exclusion in the Interstate Policies, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA as a purported assignee of Boles' claims against Interstate.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

95.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 94 of this Complaint.

96.     The Interstate Policies contain an Endorsement, titled Exclusion – Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program.

97.     The *Sunrise Ridge* Condominium project was insured under project-specific or Wrap-Up insurance policy(ies) issued by Navigators, Everest, Lexington, and/or Starr.

98.     Interstate seeks a declaratory judgment that, under the terms, conditions, and exclusions of the Interstate Policies, there is no coverage for the *Sunrise Ridge* Lawsuit pursuant to the Endorsement, titled Exclusion – Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program, in the Interstate Policies, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA as a purported assignee of Boles' claims against Interstate.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

99.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 98 of this Complaint.

100.    The Defendants never provided Interstate with notice of the Third Amended Complaint, the Settlement Agreement, the Amended Settlement Agreement, the Covenant not to Execute and Assignment of Claims, or the Amended Covenant not to Execute and Assignment of Claims.   Therefore, the notice condition in the Interstate Policies was breached.

101.    Interstate seeks a declaratory judgment that, under the terms, conditions, and exclusions of the Interstate Policies, there is no coverage for the *Sunrise Ridge* Lawsuit because the notice condition in the Interstate Policies was breached, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify *Sunrise Ridge* COA as a purported assignee of Boles' claims against Interstate.

## NINTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

102.    Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 101 of this Complaint.

103.    Interstate did not consent to the Settlement Agreement, the Amended Settlement Agreement, the Covenant not to Execute and Assignment of Claims, or the Amended Covenant not to Execute and Assignment of Claims.   Therefore, the consent condition in the Interstate Policies was breached.

104.    Interstate seeks a declaratory judgment that, under the terms, conditions, and exclusions of the Interstate Policies, there is no coverage for the *Sunrise Ridge* Lawsuit because the consent condition in the Interstate Policies was breached, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA as a purported assignee of Boles' claims against Interstate.

## TENTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

105.    Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 104 of this Complaint.

106.    Interstate did not provide written consent to Boles to transfer or assign its rights to Sunrise Ridge COA pursuant to the Settlement Agreement, the Amended Settlement Agreement, the Covenant not to Execute and Assignment of Claims, or the Amended Covenant not to Execute and Assignment of Claims.    Therefore, the "transfer of your rights and duties under the policy" condition in the Interstate Policies was breached.

26

107.     Interstate seeks a declaratory judgment that, under the terms, conditions, and exclusions of the Interstate Policies, there is no coverage for *the Sunrise Ridge* Lawsuit because the "transfer of your rights and duties under the policy" condition in the Interstate Policies was breached, and Interstate had no duty to defend or indemnify Boles; or defend or indemnify Sunrise Ridge COA as a purported assignee of Boles' claims against Interstate.

## ELEVENTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

108.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 107 of this Complaint.

109.     If the Court declares that Interstate had a duty to defend Boles against the *Sunrise Ridge* Lawsuit, and Boles made a valid assignment of its claims to Sunrise Ridge COA, Interstate seeks a declaration that Interstate's breach of its duty to defend ended when the Third Amended Complaint was filed on March 17, 2017.

## TWELFTH CAUSE OF ACTION

### (Declaratory Judgment - All Defendants)

110.     Interstate realleges and incorporates herein by reference the allegations in Paragraphs 1 through 109 of this Complaint.

111.     If the Court declares that Interstate had a duty to defend and/or indemnify Boles against the *Sunrise Ridge* Lawsuit, and Boles made a valid assignment of its claims to Sunrise Ridge COA, Interstate seeks a declaratory judgment that the Settlement Agreement and Amended Settlement Agreement were unreasonable, and a product of collusion between Sunrise Ridge COA, Boles, Boles' other insurers, and/or the other parties in the *Sunrise Ridge* Lawsuit.    The

unreasonableness and collusiveness of the settlement is evident because the project-specific insurers of Boles paid far less than their combined policy limits, though they stipulated to a judgment amount nearly twice the amount that the collective insurers paid, coupled with an assignment, against other insurers, all in an effort to minimize their indemnity obligations, knowing that the reasonable value of Sunrise Ridge COA's claims were nowhere near the stipulated amount of the judgment. One or more parties to the *Sunrise Ridge* Lawsuit, and the insurers also agreed that no Court would review the settlement, in an apparent effort to mask the collusive settlement that was orchestrated.

## **PRAYER FOR RELIEF**

WHEREFORE, Interstate prays that this Court declare and adjudicate the rights and liabilities of the parties regarding the Interstate Policies, together with the following relief:

1. For a binding declaration that Boles assignment of its claims to Sunrise Ridge COA is not valid because Boles is a delinquent Colorado corporation, and, therefore, Sunrise Ridge COA has no standing to seek damages from Interstate for the claims made in the *Sunrise Ridge* Lawsuit;

2. For a binding declaration that if the Boles assignment of its claims against Interstate to Sunrise Ridge COA is valid, such assignment was limited to the 04-05 Interstate Policy;

3. For a binding declaration that the "notice of claim" letter, dated September 27, 2016, was not a tender of Boles' defense to Interstate;

4. For a binding declaration that if the "notice of claim" letter, dated September 27, 2016, was a proper tender of Boles' defense of the *Sunrise Ridge* Lawsuit, the tender only requested a defense under the 04-05 Interstate Policy;

5. For a binding declaration that Interstate's obligations to Boles for the *Sunrise Ridge* Lawsuit, if any, should be determined by the allegations made in Sunrise Ridge COA's Third Amended Complaint, not the Second Amended Complaint;

6. For a binding declaration that Interstate had no duty to defend or indemnify Boles under the Interstate Policies in connection with the *Sunrise Ridge* Lawsuit;

7. For a binding declaration that Interstate had no duty to defend or indemnify Sunrise Ridge COA, as a purported assignee of Boles claims against Interstate, under the Interstate Policies in connection with the *Sunrise Ridge* Lawsuit;

8. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because no "property damage" occurred during the Interstate Policy periods;

9. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because of Exclusions j(5) and j(6) in the Interstate Policies;

10. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because of the Condominium and Townhome Construction Exclusion in the Interstate Policies;

11. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because of the Endorsement, titled Exclusion – Designated

Operations Covered by a Consolidated (Wrap-Up) Insurance Program, in the Interstate Policies;

12. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because the notice condition in the Interstate Policies was breached;

13. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because the consent condition in the Interstate Policies was breached;

14. For a binding declaration that Interstate had no duty to defend or indemnify the *Sunrise Ridge* Lawsuit because the "transfer of your rights and duties under the policy" condition in the Interstate Policies was breached;

15. For a binding declaration that if Interstate had duty to defend the *Sunrise Ridge* Lawsuit, Interstate's defense obligations ended when the Third Amended Complaint was filed on March 17, 2017;

16. For a binding declaration that the settlement in the *Sunrise Ridge* Lawsuit was unreasonable, and a product of collusion;

17. For costs of suit incurred herein, including attorney's fees if and where appropriate; and/or

18. For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of

Civil Procedure.


Date: November 1, 2018                                    Respectfully submitted,


                                                               */s/ George D. Yaron*

                                        _____

-                                       **George D. Yaron**
                                        Yaron & Associates
                                        1300 Clay Street,
                                        Suite 800,
                                        Oakland, CA 94612
                                        Telephone: 415-658-2929
                                        Facsimile:415-658-2930
                                        E-mail: gyaron@yaronlaw.com

                                        Attorney   for   Plaintiff,   INTERSTATE
                                        FIRE AND CASUALTY COMPANY