**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| INTERSTATE FIRE AND CASUALTY COMPANY, an Illinois Corporation,<br><br>Plaintiff,<br>v.<br><br>BOLES CUSTOM BUILDERS, INC., a Colorado Corporation, and SUNRISE RIDGE CONDOMINIUMS OWNERS ASSOCIATION, a Montana corporation,<br><br>Defendants. | Civil Action No. 1:18-cv-02804<br><br>**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT SUNRISE RIDGE CONDOMINIUMS OWNERS ASSOCIATION, INC.** |

COMES NOW, Defendant and Counterclaimant Sunrise Ridge Condominiums Owners Association, Inc. ("Association"), and provides the following Answer, Affirmative Defenses and Counterclaims in response to Plaintiff Interstate Fire and Casualty Company's ("Interstate's") Complaint for Declaratory Judgment (Document 1):

<u>ANSWER</u>

In response to the numbered paragraphs of the Complaint, the Association responds as follows:

INTRODUCTION

1.      The Association admits the factual allegations of Paragraphs 1 - 6.

**THE PARTIES**

2.      On information and belief, the Association admits the allegations of Paragraph 7.

3.      Answering Paragraph 8, the Association admits that on February 1, 2013, Boles Custom Builders, Inc. ("Boles") became identified as "delinquent" by the Colorado Secretary of State for failure to file required periodic reports.  Boles properly cured its delinquency on December 12, 2018.

4.      The Association, on information and belief, admits the factual allegations of Paragraphs 9 - 10.

5.      Answering Paragraph 11, the Association admits that it is a Montana Mutual Benefit Corporation formed under the Montana Nonprofit Corporation Act, and that its principal place of business is Big Sky, Montana.  To the extent the foregoing is inconsistent with the allegations of Paragraph 11, such allegations are denied.

**JURISDICTION AND VENUE**

6.      Paragraph 12 of the Complaint states legal assertions for which no answer is required.   The Association admits there is an actual and continuing controversy between Interstate and the Defendants.

7.      Paragraphs 13 and 14 of the Complaint states legal assertions for which no answer is required.

**FACTUAL BACKGROUND**

**The *Sunrise Ridge* Lawsuit**

8.      The Association admits the factual allegations of paragraphs 15 though 17.

9.     Paragraphs 18 through 29 of the Complaint assert the contents of a pleading filed by the Association in the underlying action.  The Association states that the referenced document, made an Exhibit to the Complaint, speaks for itself.  The Association denies that Interstate's duty to defend Boles is necessarily determined by the referenced Third Amended Complaint rather than the pleadings in place at the time or times Interstate declined to provide Boles with a defense.

### Correspondence Regarding the *Sunrise Ridge* Lawsuit

10.     The Association admits the allegations of Paragraph 30.

11.     The Association is without knowledge sufficient to form a belief about the truth of the allegations of Paragraph 31 regarding communications between Interstate and Navigators, and therefore denies the same.   The Association denies the Navigator's policy insured all portions of the Sunrise Ridge Condominiums project.

12.     Answering Paragraph 32, the Association admits that Interstate denied coverage to Boles by letter dated January 6, 2016, and that the letter contained statements as alleged.  The Association admits Exhibit B to the Complaint is a true and accurate copy of the letter.  All other factual allegations or inferences contained in the Paragraph are denied.

13.     Answering Paragraph 33, the Association admits that Hall & Evans, P.C. was defense counsel for Boles and that Exhibit C to the Complaint is a true and accurate copy of a letter sent by Hall & Evans on or about September 27, 2016, with one of the referenced exhibits, but not all.  The contents of the letter and full exhibits speak for themselves.  All other factual allegations or inferences are denied.

14.     Answering Paragraph 34, the Association states that the letter speaks for itself, and denies the factual allegations and inferences made.

15.     The Association on information and belief admits the allegations of Paragraphs 35 and 36.

16.     Answering Paragraph 37, the Association admits that its counsel sent Interstate a letter dated August 3, 2018, and that the letter included statements as related by the Complaint. The Association alleges the letter, and accompanying exhibits thereto speak for themselves.

17.     Answering Paragraph 38, the Association admits that a settlement between certain parties of the Sunrise Ridge Lawsuit was reached following mutual acceptance of a mediator's proposal on or about September 15, 2016, and that this date was identified as the effective date of the settlement in the referenced documents which the parties negotiated, executed and further amended over the next 11 months.  The Association states that the documents speak for themselves.  The Association is without knowledge whether Interstate received notice of the pending settlement or consented to it, and accordingly denies the same.  All other factual allegations of the Paragraph are denied.

18.     Answering Paragraph 39, the Association admits that amendments were made to the documents that had been negotiated and executed between and among Boles and other parties to the Sunrise Ridge Lawsuit, and that the final signature of the amendments took place on July 2, 2018.  The Association admits that amendments were made which included an elimination of a condition of Court approval of the settlement as a condition of the effectiveness of the settlement agreements, but affirmatively alleges that these amendments were made in response to concerns by the underlying Court and non-settling parties that a reasonableness determination at that time

would be premature under Montana law. The Association alleges as well that the documents speak for themselves. The Association is without knowledge to form a belief about the truth of allegations concerning notice being given to Interstate or consent to the amendments being sought, and accordingly denies the same. All factual allegations not expressly admitted in this answering paragraph are denied.

19. Answering Paragraph 40, the Association admits that it entered into a Covenant not to Execute and Assignment of Claims in the course of settling claims ("Covenant and Assignment"). The Association admits that the Covenant and Assignment assigned Boles' rights, whether known or unknown, existing or potential, and which arise by contract, statute or common law or equity against Interstate, but denies any allegation that such rights were limited to those contained in Interstate Policy Number PGL 100016. The Association further alleges the documents speak for themselves. The Association is without knowledge to form a belief about the truth of allegations concerning notice being given to Interstate or consent to the amendments and accordingly denies the same. All factual allegations not expressly admitted in this answering paragraph are denied.

20. Answering Paragraph 41, the Association admits that it entered into an Amended Covenant not to Execute and Assignment of Claims ("Amended Covenant and Assignment") in the course of addressing the concerns of the underlying Court and non-settling parties as described above. The Association admits that the Amended Covenant and Assignment assigned Boles' rights, whether known or unknown, existing or potential, and which arise by contract, statute or common law or equity against Interstate, but denies any allegation that such rights were limited to those contained in Interstate Policy Number PGL 100016. The Association further

5

alleges the documents speak for themselves.  The Association is without knowledge to form a belief about the truth of allegations concerning notice being given to Interstate or whether consent to the amendments was sought, and accordingly denies the same.  All factual allegations not expressly admitted in this answering paragraph are denied.

### Interstate Policies (Including Subparts in Complaint)

21.     On information and belief  based entirely on Interstate's representations, the Association admits the allegations of Paragraphs 42 through 45.

22.     Answering Paragraphs 46 through 58, the Association admits that the referenced policy or policies made exhibits to the Complaint include the terms as alleged, and states that the policy documents otherwise speak for themselves.   The Association expressly denies the allegations to the extent they purport to provide a basis in fact or law for Interstate's denial of a defense to Boles or its refusal to indemnify Boles or its refusal to pay the Association's claim.  All other factual allegations are denied.

23.     Answering Paragraph 59, the Association admits that Boles was one of several insureds under a policy issued by Navigator Specialty Insurance Company, but denies the policy was a "Wrap-Up Policy."   The Association denies that the Navigator's policy insured Boles for work performed on the entirety of the "Sunrise Ridge Condominiums Project," and affirmatively alleges that the Navigator's Policy's coverage was expressly limited to certain buildings generally known as "Phase II" of the project.  The Association expressly denies that the Navigator's policy insured Boles for work on Phase I of the project, which consisted of Buildings (or Homesites) Nos. 13, 16, 17. 18 and 20.   The Association alleges that Interstate expressly

insured Boles activities on Phase I of the project and that the Navigators' policy expressly did not.  All other factual allegations are denied.

24.     Answering Paragraph 60, the Association admits that Boles was defended by counsel retained by Navigators.   The Association is without knowledge to form a belief concerning the truth of the allegation that Boles was "fully" defended by such retained counsel, and accordingly denies the same.  The Association understands that the coverage of the Navigator's policy was contested.   The Association further understands that one other insurer, Maxum Insurance Company, contributed to the fees and costs incurred by retained defense counsel having determined for a time that it owed a duty of defense.

25.     Upon information and belief, the Association admits the allegations in Paragraph 61 concerning the existence and limits of a first-level excess policy issued by Everest Insurance Company but denies that such policy provided coverage for Phase I of the Sunrise Ridge Condominium Project.  All other factual allegations are denied.

26.     Upon information and belief, the Association admits the allegations in Paragraph 62 concerning the existence and limits of a second-level excess policy issued by Lexington Insurance Company but denies that such policy provided coverage for Phase I of the Sunrise Ridge Condominium Project.  All other factual allegations are denied.

27.     Upon information and belief, the Association admits the allegations in Paragraph 63 concerning the existence and limits of a third-level excess policy issued by Starr Excess Liability Insurance Company, Ltd., but denies that such policy provided coverage for Phase I of the Sunrise Ridge Condominium Project.  All other factual allegations are denied.

28. Answering Paragraph 64, the Association is without knowledge about the truth of the allegations concerning exhaustion of the limits, and accordingly denies the same.

## FIRST CAUSE OF ACTION

29. The Association incorporates its responses to the Paragraphs referenced in Paragraph 65 of the Complaint.

30. Paragraph 66 of the Complaint states legal conclusions which do not require an answer from the Association, and are denied on that basis.

31. The Association denies the allegations of Paragraph 67.

32. Paragraphs 68 and 69 state Interstate's desires, but contain no factual allegation requiring an answer and are denied on that basis.

## SECOND CAUSE OF ACTION

33. The Association incorporates its responses to the Paragraphs referenced in Paragraph 70 of the Complaint.

34. Paragraphs 71 and 72 are denied.

35. Paragraphs 73 and 74 state Interstate's desires, but contain no factual allegation requiring an answer and are denied on that basis.

## THIRD CAUSE OF ACTION

36. The Association incorporates its responses to the Paragraphs referenced in Paragraph 75 of the Complaint.

37. The Association admits it did not provide a copy of the Third Amended Complaint to Interstate. It is without knowledge whether others may have and accordingly denies the remaining allegations of Paragraph 76.

38.     Paragraph 77 contains only legal arguments, to which an answer is not required. To the extent it contains factual allegations, they are denied.

39.     Paragraphs 78 and 79 state Interstate's desires, but contain no factual allegation requiring an answer and are denied on that basis.

## FOURTH CAUSE OF ACTION

40.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 80 of the Complaint.

41.     Paragraph 81 states legal conclusions to which an answer is not required.  To the extent it includes factual allegations, they are denied.

42.     The Association denies the allegations of Paragraph 82.

43.     The Association denies the allegations of Paragraph 83.

44.     Paragraphs 84 stated Interstate's desire, but contains no factual allegation requiring an answer and is denied on that basis.

## FIFTH CAUSE OF ACTION

45.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 85 of the Complaint.

46.     Paragraphs 86 through 88 state legal contentions to which an answer is not required and accordingly are denied on that basis.

47.     Answering Paragraph 89, the Association admits that the referenced pleading contained the statements referenced, but alleges it contained other allegations.  Paragraph 89 also contains legal contentions which do not require and answer from the Association, but which are denied.

48.     Paragraph 90 states Interstate's desires, but contain no factual allegation requiring an answer and are denied on that basis.

## SIXTH CAUSE OF ACTION

49.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 91 of the Complaint.

50.     Answering Paragraph 92, the Association responds that the policies speak for themselves.

51.     Answering Paragraph 93, the Association on information and belief admits the same, but affirmatively alleges the Sunrise Ridge Lawsuit included allegations of defects and resultant property damage to the Common Elements of Building #13, 16, 17, 18 and 20, which are expressly excepted from the alleged exclusion in Interstate's Policies.

52.     Paragraph 94 states Interstate's desires, but contain no factual allegation requiring an answer and are denied on that basis.

## SEVENTH CAUSE OF ACTION

53.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 95 of the Complaint.

54.     Answering Paragraph 96, the Association on information and belief admits the same, but affirmatively alleges the Nautilus Policy was not a Wrap-Up Policy and that it provided no coverage for Phase I of the project.

55.     Answering Paragraph 97, the Association admits that Phase II of the project was insured under the Nautilus Policy.  All remaining allegations are denied.

56.     Paragraph 98 states Interstate's desires, but contains no factual allegation requiring an answer and are denied on that basis.

## EIGHTH CAUSE OF ACTION

57.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 99 of the Complaint.

58.     Answering Paragraph 100, the Association admits that it did not provide the referenced documents to Interstate.  It is without knowledge whether others did.  The Association denies any obligation of either Defendant to do so, and denies the remaining allegations of the Paragraph.

59.     Paragraph 101 states Interstate's desires, but contains no factual allegation requiring an answer and are denied on that basis.

## NINTH CAUSE OF ACTION

60.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 102 of the Complaint.

61.     Answering Paragraph 103, the Association admits it did not seek Interstate's consent but states it is without information whether others did so or whether Interstate communicated its consent.  The Association denies any obligation existed to obtain Interstate's consent at the time of the assignment of claims, and alleges that Interstate waived any right to consent if it ever existed.  Unless specifically admitted in this paragraph, all other allegations of Paragraph 103 are denied.

62.     Paragraph 104 states Interstate's desires, but contains no factual allegation requiring an answer and are denied on that basis.

## TENTH CAUSE OF ACTION

63.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 105 of the Complaint.

64.     Answering Paragraph 106, the Association is without knowledge about the truth of the allegations, but affirmatively alleges that no obligation to obtain Interstate's consent existed at the time of the settlement and that, if an obligation ever existed, it was waived by Interstate or otherwise excused.  To the extent not expressly admitted, all other allegations of Paragraph 106 are denied.

65.     Paragraph 107 states Interstate's desires, but contains no factual allegation requiring an answer and are denied on that basis.

## ELEVENTH CAUSE OF ACTION

66.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 108 of the Complaint.

67.     Paragraph 109 states Interstate's desires, and certain legal contentions, but contains no factual allegation requiring an answer and are denied on that basis.  To the extent the paragraph contains factual allegations, such allegations are denied.

## TWELFTH CAUSE OF ACTION

68.     The Association incorporates its responses to the Paragraphs referenced in Paragraph 110 of the Complaint.

69.     Paragraph 111 states Interstate's desires, and certain legal contentions, but contains no factual allegation requiring an answer and are denied on that basis.  To the extent the narrative allegations contain factual assertions, all such assertions are denied.

## **AFFIRMATIVE DEFENSES**

The Association states the following Affirmative Defenses to Interstate's Complaint:

1.      The Complaint fails to state a claim on which relief can be granted.

2.      The Plaintiff's requests for relief are barred by the doctrines of estoppel, laches and waiver.

3.      The Plaintiff's requests for relief are barred by the doctrine of prior material breach and/or failure of consideration.

4.      The Plaintiff's requests for relief are barred by the doctrine of excuse.

5.      Plaintiff's requests for relief are barred by its own material breaches of its obligations under the respective insurance policies and its unreasonable actions denying such obligations.

6.      Plaintiff's requests for relief are barred by its own unfair claims practices and unreasonable denial of benefits under one or more insurance policies.

7.      Plaintiff's requests for relief are barred by lack of prejudice to Plaintiff.

8.      Plaintiff could not unequivocally demonstrate that the loss or claim arising from the underlying claims fell outside the coverage provided under the respective insurance policies at the time or times it denied an obligation to defend Boles.

9.      The Association reserves its right to add any and all affirmative defenses which are not at this time apparent but which may become apparent through discovery, including without limitation discovery of Plaintiff's Claim Files and Underwriting Files.

## COUNTERCLAIMS

For its Counterclaims against Plaintiff Interstate Fire and Casualty Company ("Interstate") the Sunrise Ridge Condominiums Owner Association, Inc., alleges as follows:

## JURISDICTION AND VENUE

Without conceding that another Court may also have jurisdiction over these proceedings and may provide a more convenient venue, Boles alleges that this Court has jurisdiction pursuant to 28 U.S.C.A §§ 2201 and 2202 and 28 U.S.C.A. § 1332 and that venue is proper pursuant to 28 U.S.C.A. §1391(b).

## GENERAL ALLEGATIONS

The following General Allegations are the basis of each of the Counts alleged below, and are incorporated therein as if fully set forth in each.

1.      The Association is a Montana Mutual Benefit Corporation formed under the Montana Nonprofit Corporation Act.  Its principal place of business is Big Sky, Montana.

2.      The Association is the owners' association for the Sunrise Ridge Condominiums, located in the Yellowstone Club, Big Sky, Montana.  The Sunrise Ridge Condominiums consist of 24 buildings (10 Triplexes and 14 Duplexes) and a Commons building.  They were constructed in two phases. "Phase I" of the project involved the construction of five triplexes, which were designated as Buildings, Units or Homesites Nos. 13, 16, 17, 18 and 20.  Phase II of the project consisted of the remaining five triplex buildings, 14 duplex buildings and the Commons building.  Phase I and Phase II of the projects were developed by different owners.

3.      Boles Custom Builders, Inc., ("Boles") was at all relevant times a Colorado corporation with offices in Edwards, Colorado but with offices, officers and a substantial portion

of its business activities located in Montana. It is, at the time of the filing of this pleading, a corporation in good standing.

4. Boles served as the General Contractor for the construction of both Phase I and Phase II of the Sunrise Ridge Condominiums.

5. Plaintiff and Counter-Defendant Interstate, upon information and belief based on its allegations in its Complaint, is an Illinois corporation engaged in the insurance business with its principal place of business in Chicago, Illinois.

6. Upon information and belief based on its allegations in its Complaint, Interstate issued policy number PGL 1000016 to Boles Custom Builders, Inc. ("Boles"), with effective dates of September 2, 2004 to September 2, 2005, and with liability limits of $1,000,000 for each occurrence, a General Aggregate Limit of $2,000,000 and a Products-completed Operations Aggregate limit of $2,000,000. Interstate filed a copy of the 04-05 Policy with this Court on November 1, 2017, as Document 1-4.

7. Upon information and belief based on its allegations in its Complaint, Interstate issued policy number PGL 1100004 to Boles, with effective dates of September 2, 2005, to September 2, 2006, and with liability limits of $1,000,000 for each occurrence, a General Aggregate Limit of $2,000,000 and a Products-completed Operations Aggregate limit of $2,000,000. Interstate filed a copy of the 05-06 Policy with this Court on November 1, 2017, as Document 1-5.

8. Upon information and belief based on its allegations in its Complaint, Interstate issued policy number PGL 1000521 to Boles, with effective dates of September 2, 2006 to September 2, 2007, and with liability limits of $1,000,000 for each occurrence, a General

Aggregate Limit of $2,000,000 and a Products-completed Operations Aggregate limit of $2,000,000. Interstate filed a copy of the 05-06 Policy with this Court on November 1, 2017, as Document 1-6.

9.     At the time Interstate issued each of the above-described Policies, Interstate was aware that Boles was acting as a General Contractor for significant projects located in the Yellowstone Club near Big Sky, Montana, including the construction of buildings within the Sunrise Ridge Condominiums and that such projects made up a majority of Boles' construction work. Interstate's Policies reflect its agreement to insure Boles' construction-related activity located in Montana, and specifically activities taking place upon the above-described buildings making up Phase I of the Sunrise Ridge Condominiums.

10.     Specifically, Interstate's 04-05 Policy identifies the work being performed by Boles on the above-referenced Buildings, Units or Homesites Nos. 13, 16, 17, 18 and 20 (which comprised Phase I of the Sunrise Ridge Condominiums) in an exception to the Condominium and Townhome Construction Exclusion, and other homes being constructed in Montana. *See* Document 1-4, pp. 8 and 66.

11.     Interstate's Declarations to the 05-06 Policy twice describe the business of Boles as "Custom Home Builder in MT & CO." *See* Document 1-5, pp. 2 & 6. The policy again identifies the work being performed in Montana, including the construction of buildings which comprised Phase I of the Sunrise Ridge Condominiums, as being exempt from the application of the policy's Condominium and Townhome Construction Exclusion. *Id.*, p. 68.

12.     The same statements concerning Boles' business in Montana are contained in the 06-07 Policy. *See* Document 1-6, pp. 6, 9 & 69.

16

13.     On November 17, 2015, counsel for the Association sent Boles a Notice of Construction Defect under the Montana Residential Construction Defect Statute, Sections 70-19-426, et. Seq., MCA, relating to construction defects found in the Sunrise Ridge Condominiums. The Notice was copied to Interstate at its office in Chicago, Illinois, and provided information sufficient for Interstate to understand that the Association was making a claim on Interstate's liability policies issued to Boles.  A representative of Interstate signed the delivery receipt for the Notice on November 30, 2015.  A true and accurate copy of the Association's November 17, 2015, Notice of Construction Defect is filed herewith as Exhibit A.

14.     Interstate did not correspond with the Association regarding its investigation or handling the claim at any time after November 17, 2015, until after Boles' liability to the Association was settled and a Judgment against Boles was stipulated.

15.     The Association filed a Complaint and Jury Demand on November 19, 2015, in the Fifth Judicial District Court of Madison County, Montana, under Cause No. DV-29-15-58. The Complaint asserted claims against Boles.  A copy of the Complaint and Jury Demand is attached as Exhibit B.

16.     Boles forwarded the Association's Notice of Construction Defect to its insurance broker, Cottingham & Butler, upon its receipt in early December, 2015, with the direction that the claim be tendered to all appropriate insurers.

17.     On information and belief, Cottingham & Butler tendered the claim to Interstate in early December, 2015.

18.     Interstate commenced an investigation of the Association's claim in early December, 2015, identifying the claim as Claim #005-15-231419.  Mr. Irwin B . Landsberg,

CPCU, Claims Specialist, was assigned to the claim, and made contact with Boles. Through Mr. Landsberg, Interstate commenced an investigation of the claim, which included within whether Interstate was obligated to provide Boles with a defense under one or more of its policies.

19.     On information and belief based on allegations of Interstate's Complaint, Interstate understood, on or about December 10, 2015, that its insured required a defense in the Association's action, in that it notified Navigator's Insurance Company that Navigator's "may owe a duty to defend the mutual insured, Boles." Complaint, Para. 31.

20.     On information and belief, on January 6, 2016, Interstate wrote Boles and acknowledged receiving notice of the Association's claim. Interstate's letter states that it denied coverage for the claim, including any obligation to defend Boles or indemnify Boles from any liability. *See* Complaint, paragraph 32 and referenced Exhibit (Document 1-2 filed 11/1/18).

21.     On June 20, 2016, the Association filed its First Amended Complaint and Jury Demand. A true and accurate copy of the First Amended Complaint and Jury Demand is filed herewith as Exhibit C. Upon information and belief, Interstate had received a copy of the First Amended Complaint and Jury Demand, in an earlier unfiled form, and reviewed its obligations to provide a defense to Boles and indemnify it based on the allegations in the First Amended Complaint and Jury Demand. Interstate, however, declined to provide a defense or indemnity.

22.     The Association filed its Second Amended Complaint and Jury Demand on August 22, 2016. A copy of the Second Amended Complaint is filed as Exhibit D hereto.

23.     On information and belief based on the allegations of Interstate's Complaint, on or about September 27, 2016, Interstate received a letter from Boles' retained defense counsel which, among other enclosures, provided a copy of the Association's Second Amended

Complaint and Jury Demand.  A copy of the September 27, 2016, letter, with the Second Amended Complaint, was filed by Interstate as Document 1-3 on November 1, 2018.

24.     On information and belief, based on Interstate's Complaint, on October 17, 2016, Interstate responded to the September 27, 2016, letter by providing Boles' defense counsel a copy of the January 6, 2016 letter.   In doing so, Interstate "reiterat[ed] its previously stated coverage positions."   Complaint, Para. 35.  The coverage positions stated in the January 6, 2016, letter included a denial of a defense to Boles.   Interstate thus communicated its determination, in response to the September 27, 2016, letter, that it owed Boles no obligation to defend Boles from the claims asserted in the Second Amended Complaint.

25.     In summary, prior to the end of October, 2016, Interstate had opened a claims file, assigned a claims specialist, conducted an investigation including an investigation into its obligations to provide a defense and indemnity, and twice notified Boles that it would not provide a defense or indemnity to the Association's claims.

26.     Each of Interstate's decisions to deny an obligation to defend Boles was improper, unreasonable and in bad faith.

27.     At the time or times Interstate declined to defend Boles, there were no allegations or facts known to it which provided Interstate with an unequivocal demonstration that no covered property damage occurred during one of its policy periods at issue.

28.     At the time or times Interstate declined to defend Boles, there were no allegations or facts known to it which provided Interstate with an unequivocal demonstration that the claims against Boles related entirely to damages excluded by exclusion j.(5) of each policy at issue, and/or that no exception to that exclusion might apply to bring the claim back within coverage.

29.     At the time or times Interstate declined to defend Boles, there were no allegations or facts known to it which provided Interstate with an unequivocal demonstration that the claims against Boles related entirely to damages excluded by exclusion j.(6) of each policy at issue, and/or that no exception to that exclusion might apply to bring the claim back within coverage.

30.     At the time or times Interstate declined to defend Boles, there were no allegations or facts known to it which provided Interstate with an unequivocal demonstration that the claims against Boles related entirely to damages occurring outside the Products-Completed Operations coverage afforded by one or more of its policies, and/or that no exception to that exclusion might apply to bring the claim back within coverage.

31.     At the time or times Interstate declined to defend Boles, there were no allegations or facts known to it which provided Interstate with an unequivocal demonstration that the claims against Boles related entirely to damages excluded by the Condominium and Townhome Construction Exclusion in each of its policies, and/or that no exception to that exclusion might apply to bring the claim back within coverage.

32.     At the time or times Interstate declined to defend Boles, there were no allegations or facts known to it which provided Interstate with an unequivocal demonstration that the claims against Boles related entirely to damages covered by a Wrap-Up Policy and subject to an exclusion in each of its policies, and/or that no exception to that exclusion might apply to bring the claim back within coverage.

33.     The Association filed a Third Amended Complaint in the underlying action on or about April 4, 2017.  Interstate has filed a true and accurate copy of the Third Amended Complaint as Document 1-1 on November 1, 2018.

34. At the time the Association had filed its Third Amended Complaint, Interstate had already materially breached its contractual obligations under the Interstate Policies by refusing to provide Boles with a defense. Boles was under no obligation to provide a copy of the Third Amended Complaint to Interstate following such a breach or further inform Interstate of developments in the case.

35. Regardless, the allegations of the Third Amended Complaint do not provide an unequivocal demonstration that the Interstate Policies do not provide coverage for the Association's claims.

36. Following extensive discovery, inspections by consultants, and the sharing of estimates of the costs of repairing the construction defects and their resultant damages, the Association and Boles participated in settlement discussions. The discussions occurred over the course of three separate settlement conferences administered by an experienced construction mediator selected by the parties and appointed as Settlement Master by the underlying Court.

37. At a Settlement Conference taking place on September 6, 2017, no settlement was reached. At the conclusion of the conference, the Settlement Master made a "double-blind" mediator's proposal for settlement between Boles, the Association and others, and imposed a date on which all participating parties were to inform him of their acceptance or rejection of the proposed settlement.

38. On September 14, 2017, the mediator announced that all parties had agreed to the proposal.

39. The agreed settlement terms included the entry of a Stipulated Judgment against Boles in the amount of $20 Million, with partial satisfaction to be provided by Navigator

Insurance Company and other insurers providing coverage for Boles' activities during Phase II of the Sunrise Ridge Condominiums. The Association agreed to not execute upon Boles for the remainder of the Judgment in exchange for Boles' assignment of all claims it had against Third Party Defendants and Boles' insurers, including Interstate.

40.     The settlement terms were reduced to writing in a series of documents negotiated by counsel for the settling parties. The initial set of agreements was finalized in February of 2018. Amendments were made in the summer of 2018 to address procedural concerns raised by non-settling parties that the court determination of reasonableness requested by the settling parties was premature and that the settlement should be concluded before a reasonableness hearing.

41.     The settlement terms agreed to in the underlying action, including the assignment of Boles' claims, were permitted by Montana law as well as Colorado law.

42.     The settlement terms agreed to in the underlying action were reasonable, including the amount of the Stipulated Judgment to be entered against Boles.

43.     The settlement reached in the underlying action was the product of arm's-length, mediated bargaining and was free from fraud or collusion.

44.     The Association is the assignee of Boles' claims against Interstate, including the claims asserted below.

45.     There exists a controversy between Interstate and the Association over Interstate's duties to defend Boles, and to indemnify Boles from and against the Judgment.

46.     The Association seeks a declaration of the rights and legal relations with respect to the nature and extent of the coverage provided under the subject policies.

47.     The Association seeks damages from Interstate for its breach of duties owed directly to the Association, and to Boles as Boles' rights have been assigned to the Association.

48.     The Association and/or Boles has/have satisfied all conditions precedent to the bringing of these Counterclaims, or they have been excused or waived.

## CAUSES OF ACTION

### COUNT I - DECLARATORY JUDGMENT

49.     The Association incorporates all prior denials and general allegations asserted above.

50.     By reason of the foregoing, an actual controversy exists between the Association and Interstate.

51.     The Association seeks a declaratory judgment holding that one or more of Interstate's Policies provide coverage for the Association's underlying claims against Boles; that Interstate was obligated to defend and indemnify Boles against the Association's underlying claims; that Interstate breached its duties owed to Boles under its one or more of its Policies; that the assignment of Boles' claims to the Association is valid and enforceable or, alternatively ,that the Association is entitled to bring the claims on behalf of Boles and is therefor a "first party claimant";  and that Interstate may be held responsible for the Judgment entered against Boles, including pre- and post-judgment interests and costs.

### COUNT II - BREACH OF CONTRACT

52.     The Association incorporates all prior denials and general allegations asserted above.

53.     Each Interstate Policy constitutes a contract of insurance.

54.     Interstate was obligated to defend and is obligated to indemnify Boles under one or more of its policies at issue.

55.     All conditions to Interstate's obligations under the Interstate Policies were fulfilled and/or waived or excused by the words or conduct of Interstate.

56.     Interstate materially breached its duties under one or more of the Interstate policies by failing to defend and indemnify Boles against the Association's underlying claims.

57.     As an assignee of Boles' rights, the Association is entitled to recover the damages Boles suffered as a direct and proximate result of Interstate's breaches of one or more of the policies at issue, including the amount of the Judgment entered against Boles in the underlying action, and post-judgment interest.  Alternately, the Association is entitled to recover such damages on behalf of Boles.

## COUNT III - BAD FAITH BREACH OF INSURANCE CONTRACT/BREACH OF IMPLIED COVENANT

58.     The Association incorporates all prior denials and general allegations asserted above.

59.     Interstate owed duties to Boles under the Interstate Policies' implied covenants of good faith and fair dealing, wherein Interstate covenanted that it would deal with Boles fairly and honestly, and do nothing to impair, hinder or potentially injure its rights to receive the benefits available under the Interstate Policies.   In addition, Interstate owed a quasi-fiduciary duty to Boles in its handling of the Association's claims against Boles.

60.     Interstate's conduct falls below the applicable statutory and common law standards of care, violates duties of good faith and fair dealing, violates quasi-fiduciary duties and constitutes the tort of bad faith breach of insurance contract under applicable law.

61.     Interstate's actions were unreasonable and committed with knowing or reckless disregard of Boles' reasonable expectations as an insured.

62.     Interstate breached its duty of good faith and fair dealing by its actions, including without limitation, its depriving Boles of the benefits and protections of the contract of insurance; its failure to defend Boles in the underlying lawsuit; its failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Interstate Policies; its failing to conduct a prompt and reasonable investigation into the underlying lawsuit; its failing to acknowledge and act reasonably promptly upon communications with respect to the claims; its preferring its own interests above those of its insureds; and other conduct to be learned in discovery.

63.     As a direct and proximate result of Interstate's bad faith breach of its duties under the Insurance Policies, the Association, as assignee of Boles' claims, is entitled to damages in an amount to be proven at trial.

64.     The Association reserves the right to add a claim for exemplary damages pursuant to 13-21-102(1.5), C.R.S.

## COUNT IV - VIOLATIONS OF THE MONTANA UNFAIR TRADE PRACTICES ACT
### Sections 33-18-201 & -242, MCA
### (Boles' Assigned First Party Cause of Action)

65.     The Association incorporates all prior denials and general allegations asserted above.

66.     Interstate committed unfair claim settlement practices in violation of Montana's Unfair Trade Practices Act (§33-18-101, et. Seq.) in response to the Association's claims asserted against Boles.  The unfair and deceptive practices include, but are not limited to:

a.      Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b.      Refusing to pay claims without conducting a reasonable investigation based on all available information;

c.      Failing to affirm or deny coverage of claims within a reasonable period of time;

d.      Neglecting to attempt in good faith to effectual prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

e.      Failing to promptly settle claims when liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlement under other portions of the insurance policy coverage.

67.     As a direct and proximate result of Interstate unfair and deceptive claims practices, Boles has suffered actual damages including, without limitation, the entry of Judgment against it.  Such actual damages are awardable under Section 33-18-242(4), MCA.

68.     Under the Act, Boles may also recover exemplary damages under Section 27-1-221, MCA.  See Section 33-18-242(4), MCA.   Interstate acted unreasonable and with utter disregard of the rights and interest of Boles.  Interstate had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Boles, and deliberately proceeded to act in conscious disregard or intentional disregard, or with indifference to, the high probability of such injury.   Interstate's conduct was so malicious, willful and egregious as to justify an award

of punitive or exemplary damages to punish Interstate and serve as an example to it and other similarly-situated entities that conduct of the kind engaged in by Interstate is unacceptable in society and will not be tolerated.

69.    As an assignee of Boles, the Association is entitled to recover the actual and punitive damages that are awardable to Boles for Interstate's violation of the Montana Unfair Trade Practices Act.

## COUNT V - VIOLATIONS OF THE MONTANA UNFAIR TRADE PRACTICES ACT
### Sections 33-18-201 & -242, MCA
### (Association's Independent Third Party Cause of Action)

70.    The Association incorporates all prior denials and general allegations asserted above.

71.    The Association is a Montana Corporation, and its claim for damages against Interstate's insured arose in Montana.

72.    Interstate committed unfair claim settlement practices in violation of Montana's Unfair Trade Practices Act (§33-18-101, et. Seq.) in response to the Association's claims asserted against Boles.  The unfair and deceptive practices include, but are not limited to:

a.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b.    Refusing to pay claims without conducting a reasonable investigation based on all available information;

c.    Failing to affirm or deny coverage of claims within a reasonable period of time;

d.    Neglecting to attempt in good faith to effectual prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

e.      Failing to promptly settle claims when liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlement under other portions of the insurance policy coverage.

73.     The Montana Unfair Claims Practices Act affords third party claimants, such as the Association, an independent right to bring a private cause of action against any insurer who violates the above-quoted portions of the Act in the course of adjusting the third party's claims. See Section 33-18-242(1), MCA.

74.     As a direct and proximate result of Interstate's unfair and deceptive claims practices, the Association has suffered actual damages in an amount to be established at trial. Such actual damages are awardable under Section 33-18-242(4), MCA.

75.     Under the Act, a third party claimant may also recover exemplary damages under Section 27-1-221, MCA. *See* Section 33-18-242(4). Interstate acted unreasonably and with utter disregard of the rights and interest of the Association. Interstate had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the Association, and deliberately proceeded to act in conscious disregard or intentional disregard, or with indifference to, the high probability of such injury. Interstate's conduct was so malicious, willful and egregious as to justify an award of punitive or exemplary damages to punish Interstate and serve as an example to it and other similarly-situated entities that conduct of the kind engaged in by Interstate is unacceptable in society and will not be tolerated.

### COUNT VI - VIOLATIONS OF COLORADO BAD FAITH STATUTE

76.     The Association incorporates all prior denials and general allegations asserted above.

77.     Interstate is an entity engaged in the business of insurance in Colorado.

78.     Boles is an insured under the Interstate Policies, and entitled to benefits owed to it under such policies, including the defense of claims and indemnity.

79.     Boles is a "first-party claimant" within the meaning of §§ 10-3-1115 and 10-3-1116, C.R.S.

80.     The Association, in bringing a claim on behalf of Boles, is a "first-party claimant" within the meaning of §§ 10-3-1115 and 10-3-1116, C.R.S.

81.     Boles was entitled to a defense of the underlying lawsuit, and is entitled to indemnity of the Judgment entered against it.

82.     Interstate engaged in unfair claims practices in the unreasonable handling of and denial of Boles' claims in violation of the Colorado Unfair Claims Settlement Practices Act.

83.     Interstate has acted unreasonably in the denial of defense benefits owed to Boles under the Interstate Policies.

84.     Interstate acted and has continued to act unreasonably in the denial or delay of indemnity benefits owed to Boles under the Interstate Policies.

85.     As a direct and proximate result of Interstate's unreasonable delay or denial, Boles has incurred attorneys' fees and costs, and suffered a denial of a benefit including indemnification for the Judgment entered in the underlying lawsuit.

86.     In addition to any other damages or relief available to Boles, Boles is entitled to recover its reasonable attorneys' fees and court costs and two times the covered benefit, including both benefits denied and benefits delayed but ultimately paid, as prescribed by § 10-3-1116(1) and (4), C.R.S., in an amount to be proven at trial.

87.     As the assignee of Boles, the Association is entitled to all awarded damages recoverable by Boles.

88.     In addition to any other damages or relief available to Boles and/or the Association, the Association is entitled to recover court costs and attorneys' fees as prescribed by § 10-3-1116(1) and (4), C.R.S.

## PRAYER FOR RELIEF

WHEREFORE, The Association seeks the following:

1.     Dismissal of all Interstate's Causes of Action and denial of all of its requests for relief;

2.     A declaration that one or more of Interstate's Policies provided coverage to Boles for the Association's underlying claims against Boles;

3.     A declaration that Interstate was obligated to defend and indemnify Boles against the Association's underlying claims under one or more of its Policies;

4.     A declaration that the assignment of Boles' claims to the Association was valid and is enforceable;

5.     The damages caused by Interstate's breach of contract, including without limitation the amount of the underlying Judgment entered against Boles which remains unsatisfied; pre-judgment interest from the date of settlement until entry of Judgment, and post-judgment interest accruing from the entry of judgment until its full satisfaction; and attorneys' fees and costs;

6.     Boles' and the Association's respective actual damages caused by Interstate's violation of the Montana Unfair Trade Practices Act;

7.      Statutory damages of two times the covered benefits, including both benefits denied and benefits delayed but ultimately paid, as prescribed by § 10-3-1116(1) and (4), C.R.S.

8.      For exemplary or punitive damages as recoverable under applicable state law;

9.      For attorneys' fees and costs recoverable under Federal and applicable state law including, without limitation, § 10-3-1116(1) and (4), C.R.S.; and

10.     For such further equitable or other relief as the Court deems just and proper

### JURY DEMAND

The Association seeks trial by jury of all issues so triable.

Respectfully submitted this 25th day of January, 2019.

 /s/ Glenn E. Tremper
Glenn E. Tremper
Glenn E. Tremper, PLLC
P.O. Box 2263
Great Falls, MT 59403
Telephone: (406) 761-9400
Facsimile: (866) 552-9189
Email: glenn@tremperlaw.com

AND

/s/ Stephen B. Shapiro
Stephen B. Shapiro
Shapiro Bieging Barber Otteson LLP
7979 E. Tufts Avenue, Suite 1600
Denver, CO 80237
Telephone: (720) 488-0220
Email: sbs@sbbolaw.com
Attorneys for Defendant Boles Custom Builders, Inc.

Attorney for Defendant, Sunrise Ridge Condominiums Owners Association, a Montana Corporation

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on January 25, 2019, I caused a true and correct copy of the foregoing ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF SUNRISE RIDGE CONDOMINIUMS OWNERS ASSOCIATION, INC.,  to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification via email to the following:

George D. Yaron
Yaron & Associates
1300 Clay Street, Suite 800
Oakland, CA 94612
gyaron@yaronlaw.com

                                   /s/ Kristin L. Van Every_____
                                   Kristin L. Van Every